The next case we have on our call, and yes, the last case of the day and week, is agenda number 9, 130596, consolidated with 130597, intermarriage of Tronsrue. Counsel for the appellant, are you prepared to proceed? I am. Chief Justice Tice, and may it please the Court, Michael DiDomenico for George Tronsrue. I'd like to begin this morning with what I don't think is in dispute, and that is that the provision in the Tronsrue marital settlement agreement that was incorporated into their 1992 dissolution judgment, which divides George's federal military disability benefits as an asset, is a division of assets that is prohibited by federal law. Not the circuit court judges below, nor the third district majority here, nor my friend on the other side of the briefing have suggested otherwise. Section 5301A.1 of the Veterans Benefits Act prohibits such division and exempts such benefits from all state court process. In fact, in 2003, that statute was clarified to provide that any agreement dividing such benefits is also prohibited. That's going to become important later because, in my view, that clarification is important in that not only is the agreement prohibited and should never have been incorporated into the dissolution judgment in 1992, it can't be enforced now. The second district in Woolchick recognized that these type of benefits are exempt from division in state court dissolution of marriage proceedings. While federal law, generally speaking, leaves state domestic relations proceedings alone and to the states, there are certain areas where it has chosen to intervene, mainly to protect from division in state court dissolution proceedings, certain federal benefits. Social security benefits, railroad retirement benefits, and, as here, federal military disability benefits. The last time this court sort of confronted the collision between federal laws in this regard and our state marital property laws was in the Crook case, where this court held that, as a matter of federal preemption, that the U.S. Congress intended to preempt our state property law division schemes as applied to social security benefits. The anti-alienation provisions of the Social Security Act are effectively identical to the anti-alienation provisions in the Veteran Benefits Act. On top of the anti-alienation benefits, there is the further clarification that these agreements are prohibited. The rub, though, the catch in this case is that Crook came before this court as a direct appeal, direct appeal from Judge Blockman's judgment for dissolution in Champaign County to the Fourth District of here. This comes before the court as a collateral attack, and the question for this court is, does everything this court said in Crook, does all the respect, the reverence for federal preemption and federal law, and recognizing that in some areas it's going to preempt our state courts from being able to divide, as an asset, certain federal property rights, does all of that go away because it comes before us as a collateral attack instead of a direct appeal? My answer to that question is an unequivocal no for the same reasons that it can't survive direct appeal. The preemption clause has to control. Federal law has to control when it has chosen to preempt our state court's ability to divide what it would otherwise be considered marital property. The majority of the appellate courts saw it differently, and they applied what I would contend is a very, very narrow view of the voidness doctrine as understood and as announced by this court in Belleville-Toyota and its progeny. The court effectively held that, applying Belleville-Toyota, that because a dissolution of marriage case presents a justiciable matter in that it falls within the general class of cases that circuit courts can hear, that, therefore, the circuit court has subject matter jurisdiction over the case, and no provision of its judgment can later be declared void in a collateral attack. In other words, it viewed Belleville-Toyota and subject matter jurisdiction and the voidness issue in terms of only asking the question of whether or not does a divorce case belong in the general class of cases that a circuit court has jurisdiction over. And the answer to that question is yes, because it's beyond dispute that dissolution of marriage actions present justiciable matters. That's well understood. But taking that provision to its logical conclusion, no provision of a judgment could ever be collaterally attacked. No provision of a dissolution judgment could ever be collaterally attacked simply because a dissolution of marriage case presents a judiciable matter. And the problem with that is—one of the problems with that is what's presented here, is what happens when a provision of the judgment expressly violates federal law and is prohibited by federal law? Does the Belleville-Toyota thinking and rationale about subject matter jurisdiction and voidness foreclose any ability of the courts in the setting of a collateral attack from invalidating a provision of a judgment that violates federal law? I would suggest to you that the answer to that question has to be no, because— Counsel, how much time are we talking about—how much time has lapsed between when the parties entered disagreement and where we are now? A long time. Right. I mean, is that something we should be looking at? I guess when I was reviewing this matter, I thought, well, do we have a laches argument here? I mean, is there an equitable argument in this matter? That wasn't raised below as a defense or interposed by the other side. And I would suggest the answer is no, because there's no wiggle room, as far as I'm concerned, as far as the federal preemption goes. Federal law prohibits this provision. There's no question about that. It shouldn't have been entered in the first place, and it can't be enforced now. I mean, I understand a long time has passed, and frankly, Mr. Tronsky, you've made payments on this provision for years. But the fact of the matter is this case comes before you after an order enforcing a state court judgment that federal law says is invalid. That patently runs afoul of the whole principle of preemption. Could I ask this procedurally again? You're checking a judgment, a final judgment, that was entered 27 years ago, pursuant to 21401? It was not styled as a 1401 petition. It was styled – I believe that the procedural posture was brought as a motion to terminate the payments. I believe that it was initially filed under Section 510 of the Illinois Marriage and Dissolution of Marriage Act. Now, whether that was the proper vehicle or not, that didn't get raised below. I would suggest that it was more in the nature of a declaratory judgment to say that – to declare that this provision of the agreement invalid. Declaratory judgment? I'm trying to think procedurally. You know, that would be sort of like a new cause of action. All right. So it feels like, to me, a 21401, an attack on a final judgment. It was either – we can either think of it as – because there was an affirmative act petition brought by my side. That was the 510 petition, which I think is either more in the nature of a 1401 petition or a DAC action. This defense was also – the preemption and that this is – excuse me – that this provision is invalid under federal law was also raised as a defense to the contempt petition. Because that's what ultimately happened. Procedurally, my client was held in contempt, and there was a purge set for the amount due. As a defense to that contempt, we – he raised the issue that this is all void. And this Court's case law says that – So let's stick with that. I'm worried about the J word, jurisdiction. Okay. What did the Court have jurisdiction to decide? That's – I tried to put it in some kind of box, and I'm kind of getting a lot of different ideas here. The – what's before the Court is the jurisdiction had jurisdiction to decide if it could enforce this provision of the judgment. That's what was at issue in the contempt petition. After the final order that's been filed for 25 years. Oh, I'm sorry. You're going back to the original? No, I'm going to – the issue that we have in front of us today. Right? Right? Some kind of attack on a final judgment took place, correct?  And I'm trying to figure out how does that work. Finality. We have all sorts of rules, even in domestic relations, of finality. So how do you attack a judgment that's been final for 25 years? Because it violates federal law. Because this provision – the provision that's at issue violates federal law. So you're not putting it in any box of any kind of procedural position that's here. You can just walk in to say 25 years ago something was wrong and the Court should throw it out from what happened 25 years ago. No, of course not. There's got to be some kind of procedure that comes before the Court that the Court has jurisdiction to decide. And I can't, you know, figure out exact – you're saying it's a declaratory judgment. It was – no, I said it was – there was two – it came before the Court in two different ways. My side of the case filed what was called a – what they filed in motion to terminate the payments, saying that this is void. That this provision is void and you should no longer have to pay it. In response to the contempt petition brought by the other side as an affirmative defense, they said the same thing. And this Court's cases say that the issue of voidness and whether this is enforceable is something that can be brought, you know, raised affirmatively with a petition of your own or as a defense to the enforcement petition. Both were done here. It's kind of like a 214-01. It's kind of like – It's beyond two years. The argument is that the final judgment could be set aside because the original judgment was void. Correct. Is that kind of what you're saying? That's correct. That's correct. And this Court's case law, again, that's what the majority opinion held. It held that under Belleville-Toyota that the judgment can't be void because divorce cases belong to the general class of cases. And my position is that can't be true when it comes to federal preemption because the implication from that view and to just say that, well, this was done 25 or 30 years ago and it's ancient history, is just another way of saying – because Belleville-Toyota is an interpretation by this Court of our state constitution, right? So it's just another way of saying that Belleville-Toyota and our state constitution can create subject matter jurisdiction to violate federal law. I don't – that seems to me as a matter of federal preemption to be an untenable proposition. And that's effectively what the majority opinion held here. And what we contend that the majority – how the majority erred here in this very, very narrow application in Belleville-Toyota is ignore that a court can have subject matter jurisdiction generally over a class of cases, like a dissolution of marriage case. But when operating within that case, when deciding the issues within that case, it still may lack subject matter jurisdiction over portions of the claims underneath it as a matter of federal law. And I think that that – Does the federal law divest the court of subject matter jurisdiction or does the federal law simply say, with respect to this particular issue, the assignment of disability benefits, we're supposed to follow federal law in that instance? That's correct. So if you make a distinction between subject matter jurisdiction in general, the court had jurisdiction over the divorce case and the parties and the assets. While adjudicating – while exercising that subject matter jurisdiction and adjudicating the divorce case, it had to respect federal law. It can't do what it did. But that's not the question. The question is, how do you attack that? How do you collaterally attack a judgment that was entered in 1982? I mean, if this were a direct appeal, that would be your argument.  It's preemptive. Here we are. Under what theory is the court of jurisdiction to look back and find something that was void all those years ago? We know that the statutes talk about limited ways that there can be a collateral attack in a domestic relations case. Either pursuant to 214.01, a revestment doctrine – you have an article on that – where the final judgment is void, maybe, pursuant to an agreement of the parties, or where a non-protonc order would be appropriate. So how are you fitting your argument into this idea of the jurisdiction of the court to entertain a collateral attack on a final judgment? The preemption clause of the federal constitution. If federal law provides that this provision of the agreement is void and unenforceable, our understanding of voidness has to account for that. Because Belleville-Toyota, and I think what Your Honor is getting at, is that this judgment was entered a long time ago, there should have been a direct appeal, and you cannot come back and collaterally attack it. There are exceptions to everything in the law. We all understand that. There has to be an exception. Why shouldn't there be an exception to federal law? That's what Justice Albrecht was getting at in her dissent. That's what the Holstrom case, the Second District, was doing when they were both looking to the restatement to provide some basis for an exception to this idea of being able to relitigate the issue of subject matter jurisdiction when it offends federal law. And that's the vehicle. Whether it comes to the 1401, whether it comes as a defense to the contempt petition, it comes before the court because you're trying to enforce something that federal law says can't be enforced. And our understanding, our common law doctrine of voidness, which is a state law, cannot preempt or render a nullity federal law. And that's effectively what the majority has done here. It said that our Constitution says that this was a final judgment, it's not void, and no provision can be reattacked, notwithstanding that federal law has been violated here undisputedly. Counsel, should there be any consideration of the equity of that original judgment? If these funds had been excluded for payment to the wife, this judgment may have looked different because that would have been a consideration in the totality of the judgment. It is. And this Court in Crook sort of spoke to this, that there can be these federal anti-alienation statutes and these different benefits that the federal government has chosen to weigh in on as far as what state divorce courts can do can result in unfairness. Yeah, it can be unfair. There's no question about it because Justice Fulbright in the Crook decision spent a lot of time discussing, yeah, not only are these benefits not divisible, they can't even be used as an offset. And that may end up being unfair in certain circumstances. Now here, it's certainly a consideration given the amount of time that has passed and all the money that has changed hands. I'm not suggesting that we're here to claw back anything. We're just here to terminate the obligation going forward. With respect to the attorney fees issue, it sort of rides with the voidness question. It's interesting. I don't believe this Court has ever taken a substantive look at Section 508B of the Illinois Marriage and Dissolution of Marriage Act. It's one of the most often used sections of the statutes of the Divorce Act. It's the mechanism that mandatorily awards attorney fees when you have to come to court to enforce a judgment that's already been entered. It might be in our view that the fee award here has to be vacated because there was nothing to enforce. What was enforced here was something that was void. It was void from the beginning. It wasn't enforceable as a matter of federal law, and therefore there can't be any enforcement-related attorney fees. Does anyone have any further questions? Thank you. Thank you very much. Counselor, now please. Given the questions that the Court has already asked and some of the issues that have been raised, I'm going to shorten my presentation just a bit. This is not a matter of something that the Court did other than enforce a judgment that was entered 27 years before. The parties agreed to the Merrill-Sutherland Agreement that was incorporated into the judgment. They acknowledged the fact that this was contrary to what the VA was going to permit, and they put a provision in that said if it's not acceptable, then we're going to go ahead and do it separately and we're going to pay it out. But didn't that agreement occur after a contested hearing or after a pretrial where the trial judge made a clear actor argument that he was going to divide those? Well, I don't know. It's not part of the record other than a simple line in the Merrill-Sutherland Agreement itself that never occurred. There wasn't a contested hearing, I know that. There may have been a pretrial conference where the judge made certain recommendations, but in divorce cases, dissolution of marriage cases, that happens all the time. And attorneys are faced with the problem of is it worth going to trial about to prove this point, and they chose not to do that but find a separate way to resolve the equities in the case itself, and that's what they did here. And for 27 years, Mr. Tondreau has accepted the equities that were created. One of those I'll point out specifically is the amount that he received in VA, those are non-taxable, were to be included in his net income for purposes of calculating child support. That amount was reduced when he made these payments to his former wife, so the amount of child support was reduced. It would have been more if it had been added back in. So he took that benefit at the very least. I don't know what the balance of all of the other property aspects were, but there had to be some because they mutually agreed to it, and that's what the court accepted was their ultimate agreement, put it into the judgment, 27 years go by, and then they argue that it's not enforceable because of the federal statute and told the court that they didn't have the ability to enforce that judgment. Clearly all the court was doing was enforcing what judgment had already been entered, and they did have the ability to do that. Interesting question as to how they presented their defense to the fact that this was simply enforcement of a marital settlement agreement and not a determination made by the court either at the time of trial, time of prove-up, anywhere along the line. The court may have made recommendations, and that happens all the time. Some of them, even if the court made a mistake, it wouldn't have been a basis for saying that the court lacked jurisdiction. They accepted whatever recommendation the court made or whatever adjustments they made based upon the court's recommendation and came up with an agreement. That agreement stood for 27 years, and then they decided they didn't want to do it anymore after he had already reaped all of the benefits from what his side of the agreement was. I think that answers your question. So is this judgment void? The judgment itself? Yes. I don't believe so. The statute that prohibits use of VAs simply reads, it is expressly prohibited that the recipient is expressly prohibited from contracting away his rights to these benefits. He can't do it. Certainly, if he can't do it, then the court didn't have the ability to do it either, and the court never exercised the ability to do anything with those VA rights at all. But it was Mr. Tronsrud who voluntarily did what he did. He's in violation of the federal law, not the court, not my client. He's the one who used those benefits, maybe contrary to federal law, but he used those benefits to balance out whatever equities existed in the judgment. At the trial level and at the appellate level, the argument was always the court did not have subject matter jurisdiction and that the order was void. So your position is the fact that this provision in the judgment for dissolution, the fact that it conflicts with a federal statute, makes no difference. It would have made a difference, I believe, if the court had made that determination itself, if there had been a trial, a hearing, or anything saying that this is what's going to happen or this is what my ruling is. This is an agreement between the parties that they have lived by for 27 years. It made a difference at the time. So if the parties make an agreement, they're not bound by federal law. Mr. Trondreau is bound by federal law. I'll put it a different way. He didn't appeal. He didn't appeal. He didn't appeal. The court entered this order. They agreed to it. The court entered this order. At the time, looking at it, this federal statute would preempt. He didn't appeal. He didn't do a motion to vacate. He didn't do anything at all other than abide by it for 27 years. So can the decision from all those years ago be attacked now? My position has been all along, no. There was no reason to attack it at all because it was Mr. Trondreau who benefited from the use of these funds but were long past any remedy that would have been available. It didn't take him 27 years to realize that maybe this was a mistake or that he had violated federal law. But I understand that you said that he's the one that's violating federal law and that neither your client nor the court played any role in that. But since it's an ongoing obligation, you know, in Congress, and the federal law has an affirmative prohibition that, you know, no legal or equitable process whatever would be used to dispose a veteran of their military benefits, at the point that Mr. Trondreau decided that he was no longer going to violate federal law, under what authority then is this court, the appellate court or the trial court, able to enforce that prohibition against him? The prohibition deals with the benefits directly. The marital settlement agreement is simply a contract between the parties that was incorporated into a judgment. I don't think that they necessarily overlap. The VA allows Mr. Trondreau to use those funds once he receives them in any fashion that he desires except to settle a marital settlement agreement. He can gamble. He can go out and party. He can do anything that he likes with those funds once they're transferred to him. Let's just put a step beyond that. But that's not what this marital settlement agreement, it doesn't say, we don't care, you know, it's going to be a certain dollar amount and that's what you're going to pay your client. It specifically dealt with these funds. It dealt, not to disagree, it dealt with the dollar amount that he was receiving. And as that dollar amount went up, she received a percentage of that as well. She didn't have access to the funds directly? No, I'm not saying that, but it didn't just say she's going to get $540 a month. It said from what he receives from this benefit, she's going to get X amount and if the Federal Government won't cut her a check, you're going to do it. You agree to do that from the benefits that you're receiving. And so when it says that Federal law prohibits an illegal or equitable process whatever to dispose a veteran of those benefits, this contract specifically speaks to the division of those benefits by him to her, which we know is prohibited. Yes, but again, if he had the funds, if it was one step removed and he had the funds, then he could do anything that he wanted, including buying her out of whatever equities existed in the marital settlement agreement. Maybe the settlement agreement wasn't particularly artfully drafted, but the idea is still the same. This is what she's going to receive after he gets his money because they contemplated that the VA would not necessarily cut a check to her. Correct, but they didn't just lump sum or use other, you know, just say it's a combination of all income from any source. They specifically said this benefit, what he's going to get. And the Federal law seems to talk specifically about, you know, not manipulating someone even if they agree to it out of those specific benefits. But again, once he received the funds, we're just missing a step in the middle, once he received the funds, he could do anything that he wanted with them at all. And that's what he, I would argue, in the settlement agreement, that's what he's chosen to do. He gets the money, and then he can give it to her as part of the settlement and have things balanced out. There wasn't an obligation to cut it directly out of the VA's disbursement, but it was money available to him, and they balanced that out throughout the rest of the marital settlement agreement and in calculating child support. There's no questions. The court had done it. The trial court had a trial and made that determination. Everybody would have agreed to that. You simply couldn't do that. And this was even before the Wardick case came down on the second hearing. Thank you. Any other questions? Okay, my presentation is sort of short then. I'll answer questions. Thank you. Counsel in reply, may I ask you this? The judgment that was entered back in 1992, was it void or voidable? Void. Void from the beginning because federal law prohibited this. Or what's the difference between void and voidable? A voidable judgment means you have to take the appeal, you have to take a direct appeal. A void judgment can be attacked at any time. So really what we're talking about is this collateral attack. That's all we're talking about. Whether it was correct at the time or not, prohibited by federal law, that really has nothing to do with our case. It's about now, what happens? Can that be collaterally attacked? Correct. And our position is void judgments can be collaterally attacked at any time. We understand that. Can you tell me about the Mansell case in the United States Supreme Court? That was the 1989 case where the U.S. Supreme Court overwhelmingly said that these benefits are off the table as far as state court divorce, state dissolution judgments go. They cannot divide these assets. They can't affect them in any way. They're not subject to state court process in any way, including in a marital dissolution proceeding. Did it also say, the Supreme Court also noted, that whether there was a preemptive bars, the reopening of a marriage settlement that violates the provisions of the Veterans Benefits Act is a matter of state law over which the court had no authority. And so how to attack a final judgment, what we're talking about here, the United States Supreme Court remanded it back to California. And California said that while the trial court should have applied federal law instead of state law regarding the Veterans Benefits, the court could not reopen the settlement. The court did not, was not, there was no way for a collateral attack on that settlement. Is that what happened? The very footnote, the very infamous footnote five from the Mansell case. If you and your law clerks have studied Mansell case and the literature written about it. We've studied it. There's a lot written about footnote five. And a lot of people think that the court didn't mean exactly what they said. There's no question that footnote five implies that as a, it's really a restricted conduct theory. It's not necessarily the same theory that our case was decided on. That was a restricted conduct theory. But there's no question that footnote five in Mansell implies that the California courts weren't obligated, right, to reopen the judgment to reach the federal issue. And remanded it back to the California courts. That's correct. And the California courts said we can't reopen the judgment. That's correct. There was a cert petition, see we have studied the case. There was a cert petition which was denied. And the Supreme Court upheld the decision of the California Court of Appeals where they had remanded the case that the settlement could not be reopened. As a matter of state California law. Did they also say that the decision was not void? The California court? Yes. That's what the California court concluded. I would note a couple things about footnote five. The remand decision sort of questioned what footnote five meant. I think the California court on remand sort of lost and puzzled because I think they sort of said that's not really what we were getting at. And moreover, I understand that it went back up on cert and cert was denied. They often tell us, as I think your honors tell us, don't necessarily read anything into that. That's not a merits disposition. But I concur that it was certainly denied. I'll say this about footnote five. I'm certainly on the side of the debate that you've read about. That footnote five is incorrect. The Supreme Court is incorrect? No. The court's footnote certainly implies that everything that that decision said, that state courts can't do anything, can't divide these assets at all, that effectively everything the Supreme Court said in the decision is meaningless if you justify it under a state res judicata theory. That's the implication of footnote five. Did the U.S. Supreme Court mean that? I don't know. That's why there's so much literature and debate about footnote five and if it's going to one day be revisited. It would be shocking to me, it would be sort of remarkable to me that they wrote this long opinion about how important federal law is and how it preempts state dissolution or marital property division laws only in a footnote to say, oh, yeah, by the way, if you want to res judicata this under your state laws, you don't have to worry about any of this. That would be a remarkable outcome. In 1992, did the trial court have subject matter jurisdiction over the matter of Sullivan? Yes, of course. And if the trial court made a mistake by entering this order, what's the remedy? Generally speaking, the remedy is to appeal. However. So it's voidable. It was always voidable. Well, if something is void at the time it was entered, it was also voidable. Well, if the court had authority to enter an order, maybe it's wrong. Then you appeal because it can be corrected, right? That makes it voidable. But you didn't do that, or your predecessors did not do that. That's the part I don't understand. If the court had authority to enter this order, had the authority to enter this order, was it right or wrong, right? No. It did not. And this is what I was getting at before about how what Belleville-Toyota talks about is conferring subject matter jurisdiction over a general class of cases, dissolution of marriage cases being one of them. But that ignores that while a circuit court can have subject matter jurisdiction over any claims falling within that general class of claims, like, okay, a divorce case, as this court has recognized in Leopondo, a single claim got lots of parts, maintenance, child support, attorney apiece, property division, blah, blah, blah, that it has jurisdiction over those claims that fall within that general class. A circuit court may still lack subject matter jurisdiction over such claims when a federal statute deprives or divests it of jurisdiction. I mean, that's a citation from one of our workers' comp cases. And I think that that – I think that this case calls upon this court to add that on to the Belleville-Toyota analysis. It calls upon this court to say – Is it only federal prerogative? What if there's another – I call it an error, that the court entered an order and there's some specific thing that's wrong with it, the wrong statute or something like that. Clearly there's something wrong in the court's order. Does that always make it void? Void in the sense that it could be unenforced, held to be unenforceable by the court. So every single case for the court makes some kind of error that it could be attacked at any time because it's void. No. And that is the line that I think that this case is also asking you to draw. Okay? Let's talk about intermarriage of Mitchell. Okay? That was one of the cases that's cited throughout here, right? It came before this court, marital settlement agreement that had a child support order that was a percentage child support order. Can't do that under the Act. Got to be a number. Got to be a set number. The argument comes before this court. Is that void? This court says no. It's not void because the Illinois Marriage and Dissolution of Marriage Act authorized the entry of a child support order. That it took the wrong form doesn't rise to the level of making it void.  So there's some part of that analysis is what level of mistake, I guess, are we talking about here? So let's juxtapose the Mitchell analysis on here. Clearly, our laws provide that our courts can divide what is marital property. These benefits under our definition of marital property or these disability benefits would be marital property. But here comes federal law and says you can't divide this stuff. Okay. That's different. So that's different than saying, okay, the statute authorizes a child support order. It didn't take the right form. This is at a quality of a level. This is a different quality of mistake. Is that how we determine jurisdiction? The quality of the mistake? I'm suggesting that by, you know, as I said, they're adopting what Justice Albrecht in the Halston case, they sort of followed the restatement about when subject matter jurisdiction can be relitigated. And they provide a few different instances when there is something that is so out of bounds that there has to be a way to reopen judgments that are otherwise void because there's no appeal or nobody took an appeal. And so that's the end of the story. And that's what we are urging. That's what the dissent is urging you. That's what the Halston court did is to create an exception to the seemingly absolute rule that, hey, as long as the case is in the general class of cases and there's no appeal taken, it's not void, period. No provision of it can be later declared void. And that just seems to me to be an impossible provision, an impossible proposition to square with the fact that here you have federal law saying this agreement is prohibited. And not only should this agreement not have been entered in the first place, but how can we enforce it now if we have federal law saying if the supremacy clause means anything, how can we enforce it now in the face of federal law saying don't enforce it? Please bring your remarks to a close. I have nothing further to add. I'd ask that you reverse the appellate court judgment that reaffirmed the contempt findings, reverse the attorney's fees award that's tied to the void in this question, and I thank you for your attention this morning. Thank you. Thank you very much. This case, agenda number 9, 130596 and 130597, Enraged Marriage of Grantors, is taken under advisement. Thank you both for your